IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
STEPHEN EUGENE BUSCHER,            )
                                   )
            Plaintiff,             )
                                   )   CIVIL ACTION
v.                                 )
                                   )   No. 08-4120-JAR-GBC
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
_____)
```

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423(hereinafter the Act).  Finding plaintiff has not demonstrated any error, the court recommends the Commissioner's decision be AFFIRMED in accordance with 42 U.S.C. § 405(g).

**I.   Background**

Plaintiff applied for DIB on June 22, 2005 alleging disability beginning March 22, 2004.  (R. 13, 69-73).  The application was denied initially and on reconsideration, and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 13, 26, 27).  A hearing was held before ALJ Peter J.

Baum at which plaintiff was represented by counsel, and testimony was taken from plaintiff. (R. 13, 728-58). Neither a medical expert nor a vocational expert appeared or testified. Id.

On July 5, 2008, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act and denying his application. (R. 13-19). The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date and that plaintiff has an impairment of degenerative disc disease, status post lumbar surgery which is "severe" within the meaning of the Act. (R. 15). He found that plaintiff's mental impairments are not "severe," and that plaintiff's impairment or combination of impairments do not meet or medically equal the severity of an impairment in the Listing of Impairments. (R. 16). He considered plaintiff's allegations of symptoms, and the medical and other evidence of record, found plaintiff's allegations not credible, and concluded that plaintiff has the residual functional capacity (RFC) to perform a full range of sedentary work. (R. 16-18). The ALJ determined that plaintiff is unable to perform his past relevant work, and that he is a younger individual with a high school education who is able to communicate in English. (R. 18). Based upon plaintiff's age, education, work experience, and RFC, the ALJ looked to the Medical-Vocational Guidelines (20 C.F.R., Pt. 404, Subpt. P, App. 2)(the Grids) and found that Medical-Vocational Rule 201.21

directs a finding of "not disabled" in these circumstances. (R. 18-19). Therefore, he found that plaintiff is not disabled within the meaning of the Act and regulations, and denied plaintiff's application. (R. 19).

Plaintiff sought Appeals Council review of the decision, and submitted for the Council's consideration additional evidence consisting of a "Medical Statement Concerning Depression," and additional medical records from the VA. (R. 669-727). The Appeals Council received the additional evidence and issued an order making it a part of the administrative record in this case. (R. 7). The Council considered the additional evidence but found no reason to review the decision, and denied plaintiff's request for review. (R. 3-6). Therefore, the ALJ's decision is the final decision of the Commissioner. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff seeks judicial review.

## II.  Legal Standard

42 U.S.C. § 405(g) guides the court's review of a final decision by the Social Security Administration. It provides that "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the Commissioner's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d

903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

    An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step process to evaluate whether a claimant is disabled.  Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show

other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the Commissioner erred in ignoring the VA medical records; in improperly weighing the medical opinion of Dr. Pattison regarding plaintiff's "severe" mental impairments; in failing to assess a limitation to work allowing a sit/stand option;[1] and in applying the Grids without seeking vocational expert testimony, despite the presence of nonexertional impairments.  The Commissioner argues in opposition to each error alleged, and asserts the ALJ properly evaluated plaintiff's application and substantial evidence in the record supports the decision.  The court begins by addressing the proper procedure for considering additional evidence presented for the first time to the Appeals Council.

### III. Additional Evidence

Plaintiff's arguments rely, at least in part, on additional evidence presented for the first time to the Appeals Council.

---

[1] Plaintiff raised this issue for the first time in his reply brief. (Reply 3-4).  Appellate courts usually will not address issues raised for the first time in a reply brief because doing so may be unfair to the opposing party, and the issue may not be adequately briefed.  Headrick v. Rockwell Intern. Corp., 24 F.3d 1272, 1277-78 (10th Cir. 1994).  The court recommends making an exception in the present case, and will address the issue, because the Commissioner sought and received leave to file a surreply brief addressing this very issue.  (Docs. 23, 24). Therefore, the Commissioner has addressed the issue, and both parties have had the opportunity to fully brief it.  Springer v. Hustler Magazine, No. 99-5117, 1999 WL 979242, *2 (10th Cir. Oct. 28, 1999).

(Pl. Br. 4-6)(Reply 3).  Further, plaintiff's brief might be read to imply that the ALJ's mere failure to consider evidence which was not before him constitutes error in itself.  (Pl. Br. 5)("Administrative Law Judge Baum erred in failing to accord the opinions and conclusions of Keith Patterson, M.D.,[2] a treating physician, the weight to which they are entitled.").

Where as here, the Appeals Council receives new evidence, makes it a part of the administrative record (R. 7), and considers it in connection with the request for Appeals Council review, that evidence is a part of the administrative record and will be used by the court "in evaluating the Commissioner's denial of benefits."  Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004)(citing O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)).  The "'final decision' necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence."  O'Dell, 44 F.3d at 859.

Therefore, in reviewing the final decision here, the court will consider the additional evidence presented to the Appeals Council, and will also look to the Appeals Council's rationale in

---

[2]The record reveals that while Dr. Pattison is a medical professional and an "acceptable medical source," he is not an "M.D."  Without exception, Dr. Pattison signed his name with the title "DO" (Doctor of Osteopathy).  (R. 621, 624, 640, 642, 652, 691, 699, 711).  Although the "Medical Statement Concerning Depression" signed by Dr. Pattison was a pre-printed form which included the title "M.D.," when Dr. Pattison signed the form he included an additional, handwritten title, which is illegible. (R. 671).

determining whether substantial evidence in the record as a whole supports the Commissioner's decision.

## IV. Consideration of the VA Medical Records

Plaintiff claims the ALJ erred by ignoring the "extensive record before him from the Colmery O'Neil VA Hospital." (Pl. Br. 4). He argues that the ALJ relied mainly on medical records from 2005 whereas the VA records from February 2008 "reveal an entirely different state of health." (Pl. Br. 4)(citing to the "History" section of a VA "Neurology Consult." (R. 576)). The Commissioner points out that the ALJ discussed several medical records in the decision. (Comm'r Br. 7). He notes that, in fact, the ALJ specifically cited the VA "Neurology Consult" cited in plaintiff's brief, and stated that in the consult the "clinician observed no significant deficits on examination." (R. 18)(citing Ex. 3F/2 (R. 577))(cited in (Comm'r Br. 7)).

Plaintiff does not show that the ALJ ignored the VA medical records. As the Commissioner points out, the only individual VA record to which plaintiff cites was specifically cited by the ALJ. (R. 18)(citing Ex. 3F/2(R. 576-78)). Plaintiff alleged disability beginning March 22, 2004 due to chronic back pain. (R. 13, 59, 69). In May, 2005, plaintiff had surgery on his lumbar spine because of this complaint. (R. 15)(citing Ex. 1F/306(R. 442-43)). Moreover, the VA records contained in the administrative record begin on October 10, 2007 and the ALJ

-8-

hearing was on April 29, 2008. (R. 13, 613-20). Thus, it is not surprising that much of the ALJ's summary focuses on reports of medical care occurring after the alleged onset and before the VA treatment which began only about six months before the hearing.

The evidence which plaintiff cites consists of the "History" section of a VA "Neurology Consult," and reveals that it is merely recording plaintiff's report of symptoms and history. (R. 576)("he says"). Plaintiff's report in the consult is not controlling for two reasons. First, the ALJ found plaintiff's allegations of symptoms not credible, and plaintiff does not assert error in that finding. Second, and perhaps more importantly, as the ALJ pointed out in the decision, the neurologist who performed the examination noted there were no significant deficits. (R. 18)(citing Ex. 3F/2(R. 577)). Plaintiff points to no other specific VA records which were allegedly ignored by the ALJ or the Appeals Council.

Here, the ALJ stated that he made his decision, "After careful consideration of all the evidence" (R. 13), "After careful consideration of the entire record" (R. 15, 16), "After considering the evidence of record" (R. 17), and "in consideration of the overall record." (R. 18). Plaintiff points to no specific evidence showing that the ALJ ignored the VA medical records, and the decision reveals that the ALJ specifically considered those records. The court will usually

"take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173.  Therefore, lacking any evidentiary suggestion to the contrary, the court will take the ALJ's word that he considered all of the record evidence, including the VA medical records.

**V.   Evaluation of Dr. Pattison's Treating Source Opinion**

The additional evidence made a part of the administrative record included a "Medical Statement Concerning Depression" completed by Dr. Pattison, plaintiff's VA mental healthcare provider.  (R. 669-71).  In that statement, Dr. Pattison opined that plaintiff has "marked" restriction of activities of daily living; "marked" difficulty in maintaining social functioning; and deficiencies of concentration, persistence, or pace which result in frequent failure to complete tasks in a timely manner. (R. 669).  Dr. Pattison indicated that plaintiff is "markedly impaired" in three of twenty mental abilities affecting work functioning, "moderately impaired" in ten additional abilities, and "not significantly impaired" only in the remaining seven abilities.  (R. 669-70).  Dr. Pattison did not provide "comments" regarding any of his findings on the form.  (R. 670-71).

Dr. Pattison's statement was not before the ALJ, but the ALJ made specific findings regarding plaintiff's mental impairments. (R. 16).  The ALJ noted:  that the medical records from Catholic Community Services revealed fleeting mental health treatment;

-10-

that a psychological consult shows little evidence of mental impairment and the psychologist opined that plaintiff has no significant mental impairment; and that the state agency consultants found plaintiff's mental impairments not severe. Id.(citing Ex. 5F, Ex. 1F/102ff, Ex. 1F/34(R. 167, 235-37, 663-68)). The ALJ found that plaintiff has "mild" limitations in activities of daily living; in social functioning; and in concentration, persistence, or pace; and has experienced no episodes of decompensation. Id. He concluded that plaintiff's mental impairments are not "severe" within the meaning of the Act and regulations, and therefore do not impose any restrictions on plaintiff's RFC for sedentary work. Id.

The Appeals Council discussed the ALJ's consideration of plaintiff's mental impairment, and considered and rejected Dr. Pattison's "Statement:"

> With regard to your mental impairment, the Administrative Law Judge found that you had mild limitations and thus it was non-severe. This finding is supported by the opinions of the state agency medical consultant and the consultative examiner (exhibit 1F, p. 34 and 104)[(R. 167. 237)]. No evidence before the Administrative Law Judge indicated a more limited mental impairment.
>
> . . . In the questionnaire, dated August 7, 2008, Dr. Pattison indicated that you are markedly limited in activities of daily living, social functioning, and completing a normal workday. However, Dr. Pattison did not provide any explanation in support of his opinion. Further, his opinion is not supported by the evidence already considered by the Administrative Law Judge.

(R. 4).

Plaintiff claims the ALJ and the Appeals Council erred in failing to give the "medical statement opinion of Dr. Pattison" controlling weight, deference, or any weight at all. (Pl. Br. 6). Plaintiff asserts that the evidence shows his mental condition was worse than assessed by the ALJ, and argues that the ALJ and the Appeals Council failed to give sufficient weight to Dr. Pattison's treating source opinion, and "The ALJ failed to provide 'specific, legitimate reasons' for rejecting" Dr. Pattison's opinion. (Pl. Br. 5-6). In his reply brief, plaintiff explains how the evidence shows that plaintiff's mental impairment is "severe" within the meaning of the Act and the regulations, or at least establishes limitations in the mental abilities to deal with stress, coworkers, or the general public. (Reply, 1-4). The Commissioner argues that the ALJ and the Appeals Council properly considered the evidence and Dr. Pattison's opinion and the Appeals Council properly rejected the opinion, and that substantial evidence in the record as a whole supports the ALJ's decision. The Commissioner explains how in his view, the evidence supports the decision. (Comm'r Br. 8-13).

As plaintiff argues, the opinion of a treating source must be given controlling weight if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is (2) "not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also,

-12-

Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2008).  Even if not given controlling weight, a treating source opinion is worthy of deference, and must be weighed using all of the regulatory factors provided in 20 C.F.R. § 404.1527.  Id.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003) (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987))).

Although the Appeals Council's explanation was short, the court cannot find that it was erroneous.  It satisfies the legal standard for weighing a treating source opinion.  The Council noted that the ALJ's finding was supported by the opinions of the state agency medical consultant and the consultative examiner that plaintiff's mental impairment was not severe.  This is "other substantial evidence" which is inconsistent with Dr. Pattison's opinion and will preclude affording controlling weight to the opinion.  The Council also found that Dr. Pattison did not provide any explanation in support of his opinion and the opinion was not supported by the evidence already considered.  (R. 4). This finding establishes that the Council weighed the opinion in accordance with the proper regulatory standards and provided "specific, legitimate reasons" for rejecting the opinion.

Dr. Pattison provided a bare opinion without any comment to explain what medical evidence or clinical findings led him to the conclusions stated.  As the Commissioner points out, Dr. Pattison's treatment notes do not support the opinion, and do not reflect the severity of limitations presented in the opinion.  (R. 621-24, 639-42, 690-91, 698-99, 710-11).  Moreover, Dr. Pattison assessed plaintiff with a GAF[3] score of 65.  (R. 621, 623).  A GAF score in the range of 61-70 indicates "**Some mild symptoms** . . . **OR some difficulty in social, occupational, or school functioning** . . . **but generally functioning pretty well.**" DSM-IV 32(emphasis in original).  This assessment is not consistent with limitations as severe as opined in Dr. Pattison's statement.

Plaintiff's argument (that there is evidence which could support a finding either that plaintiff's mental impairment is severe, or that plaintiff has limitations in the ability to deal with stress, coworkers, or the general public) is, in essence, a

---

[3]The court notes that GAF stands for Global Assessment of Functioning.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 30 (4th ed. 1994).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  Id. at 32.  GAF is a classification system providing objective evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999)(citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

request that the court reweigh the evidence and determine that plaintiff has limitations which the ALJ and/or the Appeals Council considered and found substantial evidence to reject. But, the court may not reweigh the evidence. Hackett, 395 F.3d at 1172; White, 287 F.3d at 905; Casias, 933 F.2d at 800.

The mere fact that there is evidence which might support a finding contrary to that of the ALJ will not establish error in the final decision. "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.' We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" Lax, 489 F.3d at 1084(quoting Zoltanski, 372 F.3d at 1200)(brackets in original). Where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court may not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance. As explained by the ALJ and the Appeals Council, the conclusion of the Commissioner regarding Dr. Pattison's opinion is supported by substantial evidence in the record as a whole. Therefore, the court may not reweigh the evidence, reject the conclusion of the Commissioner, and impose a contrary conclusion as suggested by plaintiff.

**VI.   Limitation to Work Allowing a Sit/Stand Option**

In his reply brief, plaintiff claims the ALJ erred by failing to assess a limitation that plaintiff may only work at jobs allowing a sit/stand option. (Reply 3-4). He points to evidence showing plaintiff's degenerative disc disease with pain; and to his testimony that he must alternate between sitting and standing and has to get out of his truck every hour for five to ten minutes. Id. (citing (R. 15, 641, 737, 740)). The Commissioner argues that the ALJ found plaintiff's testimony not credible and properly accounted for any credible limitations in standing and walking by limiting plaintiff to sedentary work. (Surreply 1-2). The court agrees with the Commissioner.

As discussed above, the ALJ found plaintiff's allegations of limitations resulting from his symptoms not credible (R. 17), and plaintiff does not allege error in that finding. Therefore, the ALJ need not, and did not, accept plaintiff's testimony that he must alternate between sitting and standing. Consequently, the ALJ need not include a requirement that plaintiff work at jobs that allow a sit/stand option.

**VII.   The Necessity for Vocational Expert Testimony**

Plaintiff claims the ALJ erred in finding plaintiff is able to perform the full range of sedentary work, because there was no vocational expert testimony that plaintiff is able to do so. He argues that:

-16-

> Claimant has marked non-exertional limitations, as noted by Dr. Pattison in his medical statement submitted to the Appeals Council. These include marked restrictions in activities of daily living and maintaining social functioning, as well as marked limitations in remembering and understanding detailed instructions and in the ability to perform at a consistent pace, due to psychological factors. Such limitations preclude use of the Grids.

(Pl. Br. 9). The Commissioner argues that the ALJ properly found that plaintiff has no significant nonexertional limitations and that in such circumstances it is proper to rely on the Grids without seeking vocational expert testimony. (Comm'r Br. 14-16).

As plaintiff's briefs imply, exclusive use of the grids is never proper when plaintiff has solely non-exertional impairments. Soc. Sec. Ruling (SSR) 85-15, 1983-1991 West's Soc. Sec. Reporting Serv., Rulings, 344 (1992); c.f., Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(conclusive application of Grids only where the full range of work in an RFC category is available); Gossett, 862 F.2d at 806(when non-exertional impairments are present, grids are only a framework to aid determination). However, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids. Conclusive use of the grids is foreclosed only '[t]o the extent that nonexertional impairments further limit the range of jobs available to the [plaintiff].'" Channel v. Heckler, 747 F.2d 577, 583, n.6 (10th Cir. 1984) (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)). Use of a

vocational expert is required only where plaintiff's nonexertional impairments cause an additional limitation on the range of work available in a particular occupational base <u>and</u> where no other evidence (either in the record or in occupational resources upon which the Commissioner may rely, <u>see</u> 20 C.F.R. § 404.1566(d)) establishes that a significant number of jobs of which plaintiff is capable are available.

   Plaintiff's argument (that the ALJ erred in failing to produce vocational evidence that a significant number of jobs exist of which plaintiff is capable) rests upon his assertion that he must alternate sitting and standing, and upon Dr. Pattison's opinion that plaintiff has job-related limitations resulting from his mental impairment.  (Pl. Br. 7-9); (Reply 5-6).  However, as discussed above, the Commissioner properly determined that plaintiff does not require a sit/stand option, properly rejected Dr. Pattison's opinion, and found that plaintiff's mental impairment is not "severe" within the meaning of the Act and does not produce job-related limitations in his abilities.  Therefore, the ALJ properly found plaintiff is capable of performing the full range of sedentary work, and Grid rule 201.21 was properly applied to direct a finding of "not disabled."  Plaintiff has not demonstrated error in the decision.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.  Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 21st day of July 2009, at Wichita, Kansas.

                s/ Gerald B. Cohn
                **GERALD B. COHN**
                **United States Magistrate Judge**